UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC CARTER,

       Plaintiff,                      CIVIL ACTION NO. 14-cv-13502

  v.                                DISTRICT JUDGE DAVID M. LAWSON

ANDREW CARTER, JOSEPH       MAGISTRATE JUDGE MONA K. MAJZOUB
MONTGOMERY, NICHOLAS
KRINGS, and DEPUTY GALIMBERT,

       Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Marc Carter filed this *pro se* prisoner civil rights action on September 9, 2014, pursuant to 42 U.S.C. § 1983, alleging that he was assaulted by Defendants Andrew Carter, Joseph Montgomery, Nicholas Krings, and Deputy Galimbert while they were effectuating his arrest following a police chase in Ypsilanti, Michigan on August 9, 2012. (Docket no. 1.) In his Complaint, Plaintiff sets forth claims of excessive force under the Fourth Amendment to the United States Constitution, gross negligence, and intentional infliction of emotional distress. (*Id*. at 4, 6.) Plaintiff seeks declaratory relief as well as compensatory, punitive, and exemplary damages in the amount of $800,000.00. (*Id*. at 4, 7.) Before the Court is Defendants' Motion for Summary Judgment. (Docket no. 38.) Plaintiff has not responded to Defendants' Motion. This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 7.) The undersigned has reviewed the pleadings, dispenses with oral argument on the Motion pursuant to

Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons that follow, the undersigned recommends that Defendants' Motion for Summary Judgment (docket no. 38) be **GRANTED** with regard to Plaintiff's claim of gross negligence and **DENIED** with regard to Plaintiff's claims of excessive force and intentional infliction of emotional distress.

## II. REPORT

### A. Background

#### 1. *Plaintiff's Account of the Facts as Alleged in the Complaint*

On August 9, 2012, at approximately 9:30 p.m., Plaintiff, who was wanted for traffic violations, became involved in a police chase in Ypsilanti, Michigan. (Docket no. 1 at 4.) The chase lasted for approximately ten minutes and ended when Plaintiff spun into a slight slope of gravel at the intersection of Carleon Drive and Packard Road. (*Id*.) Defendants and the Washtenaw County Sheriff's Department were first on the scene. (*Id*.) Plaintiff exited the vehicle and attempted to jump over the driver's side door when Defendant Montgomery grabbed Plaintiff and Defendant Carter struck Plaintiff in the forehead with his fist. (*Id*. at 5.) Plaintiff instantly fell to his knees and became partially unconscious for a moment against the vehicle's door as Defendant Montgomery jolted his knee and fist into Plaintiff's body and Defendant Carter continued to punch Plaintiff in the head and upper body area, even after Plaintiff lay helpless on the ground. (*Id*.) Defendants Krings and Galimbert then joined in the brutal beating, during which Defendant Krings drove his knees into Plaintiff's backside and punched Plaintiff several times in his lower body area while Defendant Montgomery held Plaintiff's arms. (*Id*.)

One of the defendants also kicked Plaintiff while he was on the ground. (*Id.*) Plaintiff was then dragged approximately twenty feet on the gravel by one of the defendants while handcuffed and while still drifting in and out of consciousness. (*Id.*) Due to the extent of his injuries, emergency medical services were called to treat Plaintiff on the scene; he was then transferred to the hospital where x-rays were taken and he received several stitches in his forehead. (*Id.* at 5, 6.)

        *2.*    *Defendants' Account of the Facts as Asserted in the Instant Motion*

On August 9, 2012, at approximately 9:20 p.m., police officers of the Eastern Michigan University (EMU) police department saw Plaintiff speed past them, driving 70 miles per hour (mph) in a 25 mph zone. (Docket no. 38 at 11.) The EMU officers attempted to stop Plaintiff, to no avail, and the officers' pursuit of Plaintiff developed into a high-speed police chase. (*Id.*) Eventually, Washtenaw County Sheriff's Department deputies became the primary pursuers of Plaintiff in the high-speed chase. (*Id.* at 11-12.) The chase lasted for approximately ten minutes and for ten miles, during which Plaintiff ran red lights, weaved through lanes of traffic, and forced vehicles off the road, all while driving with his lights off at speeds exponentially higher than the posted speed limit. (*Id.* at 12.) The chase ended when Plaintiff lost control of the car while traveling around a corner in a residential neighborhood, hit a curb, and crashed into a ditch. (*Id.*) Officers later found a pillow with blood on it just outside of Plaintiff's driver's side door, which Defendants believe to be an indication that Plaintiff suffered some laceration to his face during the crash and before he exited the vehicle. (*Id.*)

Defendant Carter was driving the lead pursuit vehicle with his partner, Defendant Montgomery, and they arrived at the crash scene seconds after it happened. (Docket no. 38 at 12-13.) As they pulled up to the scene, Plaintiff opened the driver's side door and began to exit the vehicle. (*Id.* at 13.) Defendant Carter and Montgomery's car slid on the muddy dirt road and

crashed into the open door of the vehicle that Plaintiff was driving, bending it backward on its hinges. (*Id.*) Plaintiff then jumped over the door and the hood of the police car and tried to run. (*Id.*) Defendant Montgomery grabbed Plaintiff's arms from behind and tried to pull Plaintiff back over the door, but Plaintiff struggled and kicked his legs, pulled his left arm away from Defendant Montgomery, and hit Defendant Montgomery in the jaw with his left elbow. (*Id.*) In the meantime, Defendant Carter came around the front of the police car, and, seeing Plaintiff struggling with Defendant Montgomery, administered three strikes to Plaintiff in an attempt to hit Plaintiff's brachial plexus. (*Id.* at 13-14.) Plaintiff continued to struggle, so Defendant Carter administered three more strikes to Plaintiff in an attempt to hit Plaintiff's suprascapular nerve, but he was unable to do so. (*Id.* at 14.) The total amount of time elapsed between the first and last strikes that Defendant Carter administered to Plaintiff was five seconds. (*Id.*)

Plaintiff still continued to struggle, so Defendant Carter brought Plaintiff to the ground in front of the police car where other officers assisted in handcuffing Plaintiff. (Docket no. 38 at 14.) According to Defendant Krings, who arrived on the scene with Defendant Galimberti, Plaintiff attempted to hold his arm underneath his body despite the officers' instructions to place his arms behind his back. (*Id.* at 15.) Defendant Krings asserts that he was able to secure Plaintiff's left arm after he struck Plaintiff in the latissimus dorsi. (*Id.*) After Plaintiff was handcuffed, no further strikes were administered to Plaintiff's body, the last strike being fewer than twenty seconds after Plaintiff jumped out of the car. (*Id.* at 15-16.) The deputies then helped Plaintiff to his feet and asked him if he was alright, to which Plaintiff replied in the affirmative. (*Id.* at 16.)

Plaintiff was then taken to the hospital where he was treated for a one-centimeter laceration to the forehead and a "minimal deformity" of the left nasal bone that possibly

indicated a non-displaced fracture. (Docket no. 38 at 16.) Plaintiff was retained in the hospital overnight, but walked out of the hospital early the next morning without informing law enforcement or medical personnel. (*Id*.) Plaintiff was charged with several offenses as a result of his August 9, 2012 conduct, including resisting arrest under Michigan Compiled Laws § 750.81d(1), but he did not face those charges in court until he was apprehended in February of 2013, after leading Washtenaw County officers on another high-speed police chase. (*Id*. at 17.)

### 3. Plaintiff's Plea Hearing

On March 26, 2013, Plaintiff appeared in state court for a pretrial/plea hearing on the charges filed against him for his August 9, 2012 and February 2013 conduct. (Docket no. 38-8.) At the hearing, Plaintiff pleaded guilty to three counts of fleeing and eluding a police officer; one count of unlawfully driving away a motor vehicle; one count of resisting, obstructing a police officer; one count of reckless driving; one count of operating on a suspended license; and one count of possession of a controlled substance for his August 9, 2012 conduct in exchange for the dismissal of a habitual offender notice. (Docket no. 38-8 at 3.) In providing a factual basis for his plea, Plaintiff admitted that he drove away when the police attempted to stop him, which resulted in a chase that approached speeds of 100 mph. (*Id*. at 4.) Plaintiff testified that the car he was driving spun out as he crossed Packard, the back tire blew out, and he veered off into a ditch. (*Id*.) According to Plaintiff, as he got out of the car, he was beaten by the police officers and taken into custody. (*Id*.) When prompted by the judge, Plaintiff clarified that he tried to flee the scene by jumping over the car door, but he was apprehended by a fist. (*Id*.) Plaintiff testified that the officers used force to apprehend him, which was excessive in his opinion. (*Id*.) The court subsequently accepted Plaintiff's plea. (*Id*. at 5.)

5

### *4. Plaintiff's Deposition Testimony*

Plaintiff appeared for a deposition on October 27, 2015. (Docket no. 38-7.) At the deposition, defense counsel asked Plaintiff to describe what each Defendant did to him. (*Id*. at 12.) Plaintiff testified that Defendant Carter punched him in the face unnecessarily and beat him, which traumatized him and caused him a lot of stress. (*Id*.) Plaintiff said that he knew that Defendant Carter struck him a few times in the back and maybe three or four times in the upper body, and kicked him a couple of times. (*Id*. at 18.) With regard to Defendant Montgomery, Plaintiff testified that he was the first officer who grabbed him when he attempted to flee. (*Id*. at 13.) Plaintiff testified that Defendant Montgomery held him and helped Defendant Carter without stopping the situation. (*Id*. at 12.) According to Plaintiff, Defendant Montgomery did not strike him when he was attempting to flee; rather, after Defendant Carter hit Plaintiff in the face and opened his face up, Defendant Montgomery held Plaintiff as he was falling and hit Plaintiff in the upper back area. (*Id*. at 13-14.) When further prompted by defense counsel regarding Defendant Montgomery, Plaintiff admitted that he did not know if Defendant Montgomery was the one who kicked him (more than once) on his left side while he lying on his right side on the ground. (*Id*. at 14-15.)

Next, Plaintiff testified that Defendant Krings hit him with his fist in his chest/upper side area. (Docket no. 38-7 at 15-16.) Plaintiff continued that Defendant Krings did not hit him in the face, but Plaintiff was unsure whether Defendant Krings was the one who kicked him while he was down. (*Id*. at 16.) Defense counsel then asked Plaintiff whether he was face down or face up when he was kicked. (*Id*.) Plaintiff responded:

> At that time I don't – I really can't – I know I was – when I went down, I was kind of semi-unconscious due to the head blow I received and with me trying to just ball up and protect myself, they may conscrew [sic] that as me not trying to resist or whatever but they kept hitting me so you think I'm just going to – not

6

> going to just give away, I'm going to try to protect myself and – from being hit and, and I know in the process of doing that – after, after I think I got kicked or whatever, I just gave away and with the overpowering of – I think it was Montgomery and probably Galimbert. And Galimbert – because Galimbert and Krings came after Montgomery and Carter and that's when I got handcuffed.

(*Id*. at 16-17.) Plaintiff testified that Defendant Galimbert also did not stop the other officers from beating him. (*Id*. at 17.)

According to Plaintiff, the beating seemed to take a while, but he imagined that it was about 45 seconds, if that. (Docket no. 38-7 at 17-18.) Plaintiff testified that he was screaming during the beating, and he was sure that the officers were saying something as well, although he didn't recall exactly what they were saying. (*Id*. at 18.) Plaintiff added that he did not remember the officers telling him to stop resisting and put his arms behind his back, but Plaintiff said that if the officers said that, then that's when he probably stopped resisting. (*Id*.) Plaintiff agreed with defense counsel that he had a lot of opportunities to stop, such as when the officers activated their lights, and when the car hit the ditch, but he didn't. (*Id*. at 18-19.) In that regard, Plaintiff testified, "I, I kind of let loose but when I started like – be easing, I kept getting hit so I'm going to not protect myself and just keep getting hit?" (*Id*.)

### B. Governing Law

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 38.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

7

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

### C. Analysis

#### 1. *Plaintiff's Excessive Force Claims*

In Counts I and II of the Complaint, Plaintiff asserts that Defendants violated his Fourth Amendment rights by subjecting him to excessive force and by failing to intervene in the excessive force used against him. (Docket no. 1 at 4.) Defendants assert that Plaintiff's excessive-force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and collateral estoppel, or in the alternative, that Plaintiff fails to state a claim of excessive force. (Docket no.

38 at 19-29.) Defendants also argue that they are protected by qualified immunity. (*Id*. at 29-32.)

### a. The Merits of Plaintiff's Claims

The Fourth Amendment governs excessive force claims and requires the court to determine whether the amount of force used was objectively reasonable in light of the facts and circumstances confronting the officers' actions. *Graham v. Connor,* 490 U.S. 386, 395-96 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). In determining the reasonableness of the force used, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram v. City of Columbus,* 185 F.3d 579, 596 (6th Cir. 1999) (citation omitted). The court should be guided by the principle that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. In order to hold an officer liable for excessive force, a plaintiff must prove that the officer: "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). An officer who fails to act to prevent the use of excessive force may be held liable when "(1) the officer observed or had reason to

9

know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id*. (citation omitted).

Defendants argue that the undisputed facts show that they did not violate the Fourth Amendment. (Docket no. 38 at 21-27.) In this regard, Defendants assert that the force exerted upon Plaintiff was reasonable because Plaintiff indisputably engaged in conduct incredibly dangerous to himself and others by leading police officers on a high-speed police chase in the dark, without headlights, through residential neighborhoods and red lights, and into oncoming traffic. (*Id*. at 22-23.) Defendants also assert that Plaintiff's desperate, reckless behavior warranted their reasonable belief that Plaintiff was still a significant threat to officers and others even after the car he was driving was immobilized. (*Id*. at 23.) Defendants further assert that their use of force against Plaintiff was justified because Plaintiff agrees that he was resisting the officers' commands when they administered strikes to him. (*Id*. at 23.) Defendants continue that this is true with regard to the portion of the struggle during which Plaintiff fought with Defendants Carter and Montgomery and the portion of the struggle that occurred after Plaintiff had been taken to the ground but continued to "ball" up into the fetal position rather than comply with the officers' commands to put his hands behind his back. (*Id*. at 23-24.) Defendants argue that despite Plaintiff's claim that he balled up on the ground to protect himself from the officers' strikes, the fact remains that Plaintiff was actively resisting the officers' attempts to secure Plaintiff's arms behind his back. (Docket no. 38 at 25 (citing *Williams v. Ingham*, 373 F. App'x 542, 548 (6th Cir. 2010) (officer did not exert excessive force when he delivered two closed-fist blows to arrestee's middle back where arrestee continued to struggle to hold his hands under his body)).) According to Defendants, the points asserted above validate their use of force against Plaintiff.

However, at his deposition, Plaintiff testified that Defendant Montgomery did not strike him while he was attempting to flee; rather, Plaintiff testified that after Defendant Carter hit him in the face, Defendant Montgomery held him and hit him in the upper back area while he was falling to the ground.  (Docket no. 38-7 at 13-14.)  Plaintiff's testimony in this regard is consistent with his allegation that after Defendant Carter struck Plaintiff in the forehead with his fist, Plaintiff instantly fell to his knees and became partially unconscious for a moment against the vehicle's door as Defendant Montgomery jolted his knee and fist into Plaintiff's body. (Docket no. 1 at 5.)  Plaintiff also testified that when he went down to the ground, he balled up to protect himself from being hit, at which time he was kicked more than once by one of the defendants.  (Docket no. 38-7 at 14-17.)  The Court simply cannot ignore this testimony. Drawing all justifiable inferences in the light most favorable to Plaintiff, the Court must conclude that once Plaintiff was balled up on the ground in a fetal position to protect himself from Defendants' strikes, any resistance exerted by Plaintiff at that point was passive in nature, rendering Plaintiff to be less of an immediate threat to officers or others than if he was actively resisting.  *See Abel v. Harp*, 278 F. App'x 642, 650 (6th Cir. 2008).  Such a finding casts doubt on the reasonableness of Defendants' actions.

Essentially, Plaintiff's and Defendants' conflicting accounts and deposition testimony raise factual disputes regarding what actually took place after Plaintiff jumped out of the car, particularly with regard to (1) if and when Plaintiff stopped resisting at any point during his apprehension; (2) the amount of resistance exerted by Plaintiff at different points throughout the event; (3) whether Defendants' use of force against Plaintiff was reasonable in light of Plaintiff's resistance; (4) how many times and where on Plaintiff's body did each Defendant strike Plaintiff, if at all; and (5) if excessive force was used, whether any Defendant had the opportunity and the

means to prevent such force. A review of the dash-cam video evidence submitted by Defendants in this matter does not conclusively resolve these factual disputes. This is because at one point, both Plaintiff and one of the officers are positioned outside of the camera's purview for approximately eight seconds while another officer can be seen striking Plaintiff, and after Plaintiff is taken to the ground, he is completely surrounded by five officers, thus blocking Plaintiff, Plaintiff's conduct, and much of the officers' actions from the view of the camera. (*See* docket no. 38-2, Andrew Carter Video, at 21:34-21:35.) Therefore, a genuine issue of material fact exists regarding whether Defendants violated Plaintiff's right to be free from excessive force, and summary judgment in favor of Defendants on this claim is not appropriate.

b. *Heck v. Humphrey*

Defendants claim that it is an open question as to whether Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), given that Plaintiff's conviction for resisting arrest would be implicitly invalidated if his instant excessive-force claims succeed. (Docket no. 38 at 19-20.) In *Heck*, the Supreme Court held:

> . . . to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 486-487 (internal footnote omitted). To come within the *Heck* exception on an excessive force claim, either (1) the criminal provision must make the lack of excessive force an element of

the crime or (2) excessive force must be an available affirmative defense to the crime. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010).

Plaintiff pleaded guilty to assaulting, resisting, or obstructing a police officer under Michigan Compiled Laws 750.81d(1). (*See* docket no. 38-8.) "The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: '(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.'" *People v. Quinn*, 853 N.W.2d 383, 388 (Mich. Ct. App. 2014) (quoting *People v. Corr,* 788 N.W.2d 860, 863 (Mich. Ct. App. 2010)). Additionally, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Id.* (citing *People v. Moreno*, 814 N.W.2d 624, 631 (Mich. 2012)). Plaintiff admitted at his deposition and at his plea hearing that he resisted arrest by police officers on August 9, 2012. (*See* docket no. 38-7 at 13, 18-19 and docket no. 38-8 at 4.) Thus, the question before the court is whether the "lawfulness" of the officers' actions under the third element of MCL 750.81d(1) equates to a "lack of excessive force" under Michigan law.

Two courts in this district have addressed this very issue. *See Nelson v. Green Oak Twp.*, No. 14-10502, 2016 WL 233100 (E.D. Mich. Jan. 20, 2016) (Borman, J.) and *Johns v. Oakland Cty.*, No. 15-cv-12924, 2016 WL 4396065 (E.D. Mich. Aug. 18, 2016) (Michelson, J.). The *Nelson* court framed the issue as follows:

> [I]f lawfulness is now an element of the crime of resisting, is "lawfulness" to be defined as an arrest without excessive force, so that a necessary element of the crime of resisting is proof of a lack of excessive force? If the answer is yes, then a § 1983 claim of excessive force *would* negate an element of the crime to which Plaintiff pleaded guilty and *would* be barred by *Heck*. Even if the lack of excessive force is not an express element of the crime of resisting . . . , does

13

> *Moreno* suggest that excessive force is now an affirmative defense to the crime of resisting? If yes, then under the second scenario recognized in *Schreiber*, Plaintiff's excessive force claim would be barred by *Heck*.

*Nelson*, 2016 WL 233100, at *14 (emphasis in original). After a lengthy and thorough analysis of Michigan and other relevant legal precedent, the *Nelson* and *Johns* courts concluded that the answers to the questions posed above are no. *Nelson*, 2016 WL 233100, at *14-21; *Johns*, 2016 WL 4396065, at *4-5. Although *Nelson* and *Johns* are not binding here, the undersigned reaches the same conclusion for the reasons discussed therein. Accordingly, Plaintiff's success on his claims of excessive force would not necessarily invalidate his state-court conviction for assaulting, resisting, or obstructing a police officer under MCL 750.81d(1), and Plaintiff's claims are not barred by *Heck*.

        c.       <u>Collateral Estoppel</u>

Next, Defendants argue that even if Plaintiff's excessive force claims are not barred by *Heck*, they are barred by collateral estoppel because Plaintiff admits that he resisted arrest. (Docket no. 38 at 20-21.) The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that a federal court apply state law in determining preclusive effect. *See Larry v. Powerski*, 148 F. Supp. 3d 584, 594, 595 (E.D. Mich. 2015). In Michigan, collateral estoppel applies when the following three elements are satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004) (citation, footnote, and internal quotation marks omitted). Defendants correctly point out that Plaintiff admitted to and pleaded guilty to resisting arrest under MCL § 750.81d(1). (Docket no. 38 at 19-21.) As discussed above, however, a lack of excessive force is not an element of MCL §

750.81d(1), and excessive force is not an affirmative defense to the crime of resisting arrest under MCL § 750.81d(1). Accordingly, the question of whether Defendants exerted excessive force against Plaintiff was neither a question of fact essential to Plaintiff's resisting arrest conviction, nor was it actually litigated at the state-court level. Plaintiff's § 1983 excessive force claims are therefore not barred by collateral estoppel.

### d. Qualified Immunity

Defendants also claim that they are entitled to qualified immunity. (Docket no. 38 at 29-32.) In determining whether a qualified immunity defense shields Defendants from individual civil liability, the court should consider whether "taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution." *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). "If . . . a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. (citation and internal quotation marks omitted). *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (the court may exercise its discretion in deciding which of the two steps should be addressed first). Here, having found that a jury could determine that Plaintiff's Fourth Amendment rights were violated, and because the right to be free from excessive force is clearly established, *see Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015), Defendants are not protected by qualified immunity.

### 2. *Plaintiff's Gross Negligence Claim*

In Count III of the Complaint, Plaintiff claims that Defendants "committed the Tort of Gross Negligence contrary to MCL 691.1407(2)(c)." (Docket no. 1 at 6.) Michigan Compiled Laws § 691.1407 provides that an officer or employee of a governmental agency is immune from tort liability while acting within the course of his employment, unless the officer's conduct

amounts to gross negligence that is the proximate cause of the injury. Mich. Comp. Laws § 691.1407(2)(c). "Although establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action" for claims that sound in excessive force. *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) (citing *Van Vorous v. Burmeister,* 687 N.W.2d 132, 143 (Mich. Ct. App. 2004). Accordingly, summary judgment on Plaintiff's gross negligence claim should be granted.

### 3. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

Lastly, Plaintiff asserts a claim of intentional infliction of emotional distress (IIED) against Defendants. (Docket no. 1 at 6.) Specifically, in the Complaint, Plaintiff alleges that he suffers from stress, anxiety, and severe emotional distress as a result of Defendants' actions. (*Id.* at 6.) Additionally, Plaintiff testified that he was traumatized when Defendant Carter punched him in the face unnecessarily and that he suffers a lot of stress from Defendant Carter's actions. (Docket no. 38-7 at 12.). To establish a claim of intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (citations omitted). Outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir.1998) (citation omitted). Here, if a jury credits Plaintiff's testimony that Defendant Montgomery struck him while he was falling down and that one of the Defendants kicked Plaintiff multiple times while he was trying to protect himself, it could find that such conduct was "extreme and outrageous," intentional, or reckless. Accordingly, a

genuine issue of material fact exists as to whether Defendants intentionally inflicted emotional distress upon Plaintiff.

Defendants argue that Plaintiff's IIED claim is barred by Michigan's governmental immunity statute, Mich. Comp. Laws § 691.1407. (Docket no. 38 at 32-33.) Michigan's Governmental Tort Liability Act confers immunity on government employees for intentional torts if the employee can prove by a preponderance of the evidence that: "(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, (b) the acts were undertaken in good faith, or were not undertaken with malice, and (c) the acts were discretionary, as opposed to ministerial." *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (citing *Odom v. Wayne County,* 760 N.W.2d 217, 228 (Mich. 2008)). With regard to the first and third elements, Defendants assert that there is no question that they were conducting discretionary acts within the scope of their employment when they arrested Plaintiff. (Docket no. 38 at 33.) Regarding the second element, Defendants assert that they were simply responding to Plaintiff's threatening, resistant, and noncompliant behavior. (*Id.*) Again, however, if a jury credits Plaintiff's testimony, it could also find that Defendants' actions were not taken in good faith or without malice. *See Lyttle v. Riley*, 524 F. App'x 226, 229 (6th Cir. 2013) ("Whether a tortfeasor acted in good faith is a question of fact generally left to the jury.") Accordingly, Defendants' claim of government immunity and their Motion for Summary Judgment of Plaintiff's IIED claim should be denied.

### D. Conclusion

For the above-stated reasons, the undersigned recommends that the court **GRANT** Defendants' Motion for Summary Judgment (docket no. 38) with regard to Plaintiff's claim of

gross negligence and **DENY** Defendants' Motion with regard to Plaintiff's claims of excessive force and intentional infliction of emotional distress.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 24, 2017          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: January 24, 2017        <u>s/ Lisa C. Bartlett</u>
                                         Case Manager