UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC CARTER,

                    Plaintiff,                    Case Number 14-13502
v.                                                Honorable David M. Lawson
                                                  Magistrate Judge Mona K. Majzoub
ANDREW CARTER, JOSEPH
MONTGOMERY, NICHOLAS KRINGS,
and DEPUTY GALIMBERT,

                    Defendants.
_____/

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION,
OVERRULING IN PART DEFENDANTS' OBJECTIONS, GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, AND CONTINUING ORDER OF REFERENCE**

Plaintiff Marc Carter, a Michigan prisoner representing himself, filed this lawsuit under 42

U.S.C. § 1983 against Washtenaw County, Michigan Deputy Sheriffs who arrested and beat him

following a high speed chase. The plaintiff contended in a complaint that the officers used excessive

force in effectuating the arrest, thereby violating his Fourth Amendment rights. The Court referred

the case to United States Magistrate Judge Mona K. Majzoub under 28 U.S.C. § 636(b)(1)(B) and

E.D. Mich. LR 72.1(b)(3) to conduct pretrial proceedings. Thereafter, the defendants filed a motion

for summary judgment. Judge Majzoub filed a report on January 24, 2017 recommending that the

defendants' motion be denied in the main, although she recommended dismissal of the plaintiff's

state law claim for gross negligence. The plaintiff did not object to the report and recommendation,

but the defendants filed timely objections, and the matter is now before the Court for fresh review.

I.

The facts of the case — and the parties' competing versions of them — were summarized throughly by the magistrate judge.  Therefore, only a brief summary is necessary here.  The events occurred on August 9, 2012, when the plaintiff's dangerous driving caught the attention of the Eastern Michigan University police.  The plaintiff was driving a stolen car, and engaged officers from the Ypsilanti Police Department and deputies of the Washtenaw County Sheriff Department in a high-speed chase.  The pursuit continued for more than 10 minutes, until the plaintiff lost control of his vehicle in a residential neighborhood, struck a curb, and crashed into a ditch.  A pursuing police cruiser slid to a halt on the muddy road and hit the driver side door of the vehicle, bending it backwards.  The plaintiff then leaped over the door and the hood of the police cruiser and tried to flee.  Deputy Montgomery got out of the cruiser, quickly caught up with Carter, and grabbed him from behind.  The parties agree on these facts.  Their stories diverge from that point on.

The defendants maintain that the plaintiff attempted to flee until he was subdued.  They say that he continued to resist arrest, which necessitated the "administ[ration of] three strikes in an attempt to hit Carter's brachial plexus," and "three additional strikes in an attempt to hit [his] suprascapular nerve."  The plaintiff was taken to the ground, but, say the defendants, he "continued to struggle" and "refused to be handcuffed," holding his arms underneath his body until the blows from the police subdued him and he was handcuffed.  All of this, they say, took about 20 seconds.

The plaintiff insists that the force used to subdue him was excessive.  He says that Deputy Carter, "punched [him] in the face unnecessarily" and "beat" him as Montgomery was holding him, that Montgomery "kicked [him on his  left side] when [he] was down" and that when Montgomery kicked him, he was laying on the ground, on his right side.  The plaintiff stated that Deputy Krings

-2-

punched him twice in the front of his chest, also while he was on the ground.  He said that Deputy Galimbert "probably" hit or kicked him while he was on the ground, and also asserted that Galimbert "didn't stop [the other officers] from beating" him.  The plaintiff testified that the beating while he was on the ground lasted "a while," which he estimated to be around 45 seconds.

At least one of the police vehicles was equipped with a dash camera, but the defendants concede that "this part of the parties' interaction occurs just outside the frame of the video footage." Also in the record is a transcript of a guilty plea colloquy from the state court proceedings in which the plaintiff was convicted of several charges related to the August 9, 2012 flight and apprehension, including felony resisting arrest.  The defendants took the plaintiff's deposition, which is part of the record as well.

The plaintiff filed his complaint on September 9, 2014.  In four counts, the complaint raises claims against the individual defendants via 42 U.S.C. § 1983 for excessive force (count I) and failure to intervene to prevent the use of excessive force (count II), and under state law for gross negligence (count III), and intentional infliction of emotional distress (IIED) (count IV).  As noted, the defendants moved for summary judgment.  The plaintiff did not file a response to the motion.

In her report on the defendants' motion for summary judgment, Magistrate Judge Majzoub recommended that the defendants' motion be granted in part and the claim for gross negligence be dismissed because there is no free-standing cause of action for "gross negligence" premised on conduct that amounts to an excessive use of force.  However, she concluded that the excessive force and IIED claims should be allowed to proceed, based on the variance between the parties' accounts of the apprehension, and because the video record of the event does not unambiguously resolve their conflicting accounts.

The magistrate judge also found that the defendants were not entitled to qualified immunity, because the right to be free from excessive force during the course of an arrest is well established, and a jury reasonably could conclude that the defendants' acts were unreasonably excessive when they kicked and punched the plaintiff, more than once, while he was semi-conscious and "balled up on the ground in a fetal position to protect himself from Defendants' strikes," offering nothing more than "passive resistance" to their attempts to place him in handcuffs.

The magistrate judge concluded that the IIED claim should proceed because the plaintiff's testimony minimally sufficed to show that the defendants intentionally inflicted a severe beating on him that left him "traumatized," and a jury reasonably could conclude that their conduct was "malicious," so that they would not be entitled to state law governmental immunity.  Finally, the magistrate judge found that, notwithstanding whether the conviction for resisting arrest comprised as a necessary element that the arrest was "lawful," the recent decisions of federal and state courts on point support the position that an arrest can be "lawful" even if excessive force is used to accomplish it, and, therefore, the state did not necessarily have to prove — nor was the plaintiff compelled to admit in the course of entering his guilty plea — that no excessive force was applied by the defendants.

The plaintiff did not object to the report and recommendation.  The defendants filed objections to the report and recommendation, citing five grounds.

## II.

The filing of timely objections to a report and recommendation requires the Court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667

-4-

(1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

## A.

The plaintiff has not objected to the magistrate judge's recommendation to dismiss his gross negligence claim. Absent objection, that recommendation will be adopted. *See McClanahan*, 474 F.3d at 837 (explaining that "'[o]nly those specific objections to the magistrate's report made to the

district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have'") (quoting *Smith*, 829 F.2d at 1373).

B.

In their first objection, the defendants argue that the magistrate judge's determination on their unopposed motion should have been limited to examining whether the defendants had met their burden of production; instead, the magistrate judge "did the plaintiff's work for him" and "took on the role of an advocate" by combing the record in search of evidence to support the claims.

It is well recognized that "[t]he party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

However, although the law is clear that the Court is not obligated to perform a searching review of the record, the Court certainly cannot be faulted for taking the time thoroughly to review and consider those portions of the record that the defendants' themselves attached in support of their motion. The defendants have not cited any authority for the proposition that the Court is obligated to turn a blind eye to everything beyond their own defendant-favorable interpretation of the record evidence, and to disregard any contrary portions of the record that were submitted with the motion, but not cited by them. That notion is contrary to the plain language of Federal Rule of Civil

-6-

Procedure 56, which directs the Court how to proceed in the event of an insufficient response to a dispositive motion: where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if *the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it*."  Fed. R. Civ. P. 56(e) (emphasis added).

"Rule 56(c) requires a party objecting to a motion for summary judgment to support its assertions by 'citing to [sic] particular parts of materials in the record.'"  *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014).  Consequently, the Sixth Circuit has noted that it does "not entertain on appeal factual recitations not presented to the district court when reviewing a district court's decision."  *Ibid.* (citing *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007); *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)).  "This burden to respond is really an opportunity to assist the court in understanding the facts."  *Guarino*, 980 F.2d at 405.  "But if the non-moving party fails to discharge that burden — for example, by remaining silent — its opportunity is waived and its case wagered."  *Ibid.*  The defendants are correct that "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact,'" and "a court's reliance on the facts advanced by the movant is proper and sufficient."  *Id.* at 404 (quoting *Street*, 886 F.2d at 1480).  However, there is no support in Rule 56 or the decisions on point for the defendants' position that the Court is not *permitted* to review all of the evidence submitted by the moving party, and to determine whether, in reality, it supports the facts that they claim to be undisputed, or discloses other facts that are at odds with their assertions.  When considering challenges to summary judgment rulings on appeal, the Sixth Circuit routinely engages in its own review of the evidentiary record.  *E.G., Jude v. Inez Deposit Bank*, 968 F.2d 1215, 1992

WL 158877, at *3 (6th Cir. 1992) ("*Review of the materials presented to the trial court* affirms that

court's conclusion that no genuine issues of material fact existed.") (unpublished table decision).

Here, the magistrate judge concluded that the excerpts of the plaintiff's deposition testimony

supplied by the defendants suggest that, after Deputy Carter's initial punch to his face, the plaintiff

did not resist their attempts to arrest him, and that, as he lay on the ground, unresisting and only

partly conscious, helplessly curled in a ball only to shield himself from the continued beating, at least

three of the defendants continued to beat and kick him for up to 20 seconds. She also found that

substantial parts of the beating were not captured by the video camera or were obscured from view,

so the parties' conflicting accounts of what happened on the ground could not be reconciled by resort

to the video record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that a court may grant

summary judgment based on video evidence that contradicts the non-moving party's factual

assertions, but only when that party's position "is blatantly contradicted by the record, so that no

reasonable jury could believe it" and amounts to "visible fiction"). Certainly it was not improper

for the magistrate judge to take the time to view the video tape and read the deposition testimony

before coming to her conclusion. In fact it would be improper and in derogation of the duties of the

Court to do otherwise.

The first objection will be overruled.

## C.

Next, the defendants repeat their argument that there is no genuine dispute that the officers

did not use excessive force, because the plaintiff "admits that he engaged in 'active resistance.'"

They contend that there is no authority for the proposition that officers engage in excessive use of

force where they merely use a modest number of physical strikes on a resisting suspect, to obtain his

compliance with orders to stop resisting and present his hands to be cuffed, during the course of a less than 20-second struggle. However, that position necessarily depends on the defendants' own view of the evidence, which, as the magistrate judge observed, is inconsistent with the properly plaintiff-favorable view of the record that the Court must take when considering whether to grant summary judgment.

When considering a motion for summary judgment, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander*, 576 F.3d at 557-58 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The defendants argue at some length that it is well established that they are entitled to use physical strikes to obtain compliance when a suspect is "actively resisting." But the principal support for their position is their assertion that they "have unequivocally stated that [the plaintiff] was holding his arms underneath his body, despite the officers' efforts to put them behind his back." Defs.' Objs. at 18. Their testimony on that point, however, is contradicted by the account that the plaintiff gave at his deposition. The plaintiff testified that as soon as Deputy Carter punched him in the face, he slumped to the ground and was semi-conscious. He stated that, after he fell to the ground, he was repeatedly punched and kicked in the chest, side, and back by officers Carter, Montgomery, and Krings. He also testified that, while he was on the ground, he was laying on his right side, "kind of semi-unconscious due to the head blow I received and with me trying to just ball up and protect myself [from being hit]." That testimony directly controverts the defendants' assertion that the plaintiff was "holding his arms underneath his body," particularly due to the

obvious physical incongruity suggested by an attempt by the plaintiff to hold his arms "underneath his body," while also laying on one side. The defendants would like the Court to adopt their account of the struggle as the definitive version, for obvious reasons. But the Sixth Circuit sternly has warned that, when seeking summary judgment, particularly on the ground of qualified immunity, defendants unequivocally must accept the facts as asserted by the plaintiff, not as asserted or shaded by their own testimony and arguments. *See McDonald v. Flake*, 814 F.3d 804, 816 (6th Cir. 2016) ("As the plaintiffs point out, Officer Flake's appeal was solely a fact-based challenge to the plaintiffs' evidence and the district court's findings, which was both contrary to settled law and in flagrant disregard of the district court's direct admonition that Flake must accept the plaintiffs' version of the facts in order to raise a justiciable appeal. Despite his protests in his response filing, Flake cannot overcome this problem. His appeal was 'obviously without merit.'" (quoting *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013)).

The defendants correctly point out, and it is well accepted in this circuit, that "active resistance" can justify the use of physical force to secure an arrest, particularly where a suspect physically struggles to withhold his hands from handcuffing. *See Jackson v. Washtenaw County*, No. 15-1250, 2017 WL 416973, at *3 (6th Cir. Jan. 31, 2017) (distinguishing active and passive resistance and the degree of force each might justify). The Sixth Circuit has recognized that a "'deliberate act of defiance' using one's body can constitute active resistance, such as where a suspect resist[s] arrest by 'laying down on the pavement and deliberately locking his arms together tightly under his body while kicking and screaming.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 534-35 (6th Cir. 2013)). But the plaintiff's conduct here, as described by him, reasonably could be found by a jury to be

-10-

nothing more than a failure to comply with an order to present his hands, which, it is equally well accepted, is properly viewed as mere "passive resistance," which is not enough to justify repeated punching and kicking by officers. *Jackson*, 2017 WL 416973, at *4 ("We have held that a failure to present one's arms to an officer upon request without more is at most passive resistance, but that a physical struggle to maintain control of one's limbs while being placed in handcuffs can be active resistance.").

The defendants contend that the plaintiff has admitted that he "resisted" their efforts to arrest him, and that he is estopped from arguing otherwise, after he entered a plea of guilty to the resisting and obstructing charge. But his allocution at the plea hearing did not contradict his deposition account of the roadside apprehension, where he admitted that he tried to flee only until he was "apprehended by a fist," and he never conceded that he actively struggled against officers once he was taken to the ground by officers Carter and Montgomery. As discussed further below, the plaintiff did not admit that no excessive force was used on him when he pleaded guilty to the resisting charge. And the fact that he admitted resisting at some point does not rule out a finding that, at a later moment, when he had stopped resisting, the defendants acted unreasonably and contrary to the Fourth Amendment when they continued to beat and kick him. *Jackson*, 2017 WL 416973, at *3 ("Because each tasing or punch can be a separate constitutional violation, we analyze them in turn.").

The defendants contend that the plaintiff has conceded that he "resisted" their efforts to cuff him while he was on the ground. But he testified that he did not hear any order to stop resisting and allow himself to be cuffed while he was on the ground, "balled up," and tried only to "protect himself" from the repeated blows, and that, as soon as he heard that order, he ceased all efforts to

-11-

stave off the attacks. Perhaps that conduct amounted to noncompliance. But the Sixth Circuit has "held that mere noncompliance is not active resistance." *Woodcock v. City of Bowling Green*, No. 16-5322, 2017 WL 633385, at *4 (6th Cir. Feb. 16, 2017) (citing *Goodwin*, 781 F.3d at 323-24 (holding that refusal to comply with an officer's command to step outside the apartment was not active resistance); *Eldridge*, 533 F. App'x at 535 ("If there is a common thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more.")).

In light of the plaintiff's testimony that he was only semi-conscious, as a result of being punched in the face by Deputy Carter, the jury could find that officers in the defendants' positions reasonably ought to have perceived that the plaintiff was merely — perhaps not even entirely consciously — reacting to repeated blows by curling up on his side, passively trying only to shield himself from repeated blows, rather than actively resisting any efforts to handcuff him, particularly because, according to the plaintiff, as soon as the officers gave a verbal order to stop resisting, then the plaintiff complied.

The second objection by officers Carter, Montgomery, and Krings will be overruled, because the plaintiff specifically testified that he was struck more than once by each of those officers. But he did not offer any positive testimony that officer Galimbert ever punched or kicked him; he only speculated that Galimbert "probably" did so because he was on the scene. The plaintiff also contends that Galimbert failed to intervene, but in the context of a fleeting struggle, which the video record shows took 20 seconds at most, and absent any other testimonial details about Galimbert's conduct, there is no proof in the record that would suffice either to hold Galimbert personally liable

-12-

for any direct use or force, or to show that he had any reasonable opportunity to intervene to prevent a use of force by others.

The Sixth Circuit has held "that a police officer who fails to act to prevent the use of excessive force may [] be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). However, although the court of appeals has "found that officers could be held liable under § 1983 for standing by idly while other officers repeatedly beat and kicked a suspect and dragged him down an alley," it "also [has] made clear . . . that officers cannot be held liable under this theory if they do not have 'a realistic opportunity to intervene and prevent harm.'" *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013). The plaintiff is "required to show that [the defendant] himself violated the Constitution by asking another officer to use excessive force or by failing to stop him from doing so." *Landis v. Galarneau*, 483 F. App'x 209, 211 (6th Cir. 2012). "[A]n officer's mere participation in events that include the use of excessive force is not itself sufficient grounds to impose liability." *Landis*, 483 F. App'x at 211 (citing *Wilson v. Morgan*, 477 F.3d 326, 337 (6th Cir. 2007) ("[A]n officer who is merely present at a scene but is not directly responsible for the complained of action is entitled to qualified immunity from suit under § 1983.")).

Defendant Galimbert's objection will be sustained. As to the other defendants, they can be held to account for their "failure to intervene," where the record testimony suggests that they directly participated in the beating. Liability can be imposed "when an officer has direct responsibility for [the] allegedly excessive force" *Landis*, 483 F. App'x at 211 (citing *Wilson*, 477 F.3d at 337).

-13-

D.

The defendants also object, contending that they are entitled to qualified immunity where there was no case law in August 2012 that clearly established that officers used excessive force where they "[struck] a writhing defendant while — only seconds after engaging in a high-speed chase — he obstruct[ed] officers and attempt[ed] to wriggle out of their grasp," and "administer[ed]strikes and kicks to a suspect who admits that he [rolled] up into a ball with his arms beneath him instead of complying with the officers' commands to lie still and place his hands behind his back."

The defendants are correct that, if the undisputed record facts were as they portray them to be, they probably would be entitled to immunity. But, as noted above, the record is not as decisive as they suppose, and the plaintiff's testimony does not support their view of the events.

The qualified immunity defense may be raised at any stage of the case. When it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott*, 550 U.S. at 378. That means that the court must view the facts in the light most favorable to the plaintiff, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott*, 550 U.S. at 378.

The magistrate judge correctly noted, and the defendants do not dispute, that the right to be free from the application of excessive force during an arrest was clearly was established in August 2012, and the Sixth Circuit's decisions on point supplied ample direction to the defendants so that they should have known that kicking and beating a cowering suspect who does nothing more than

-14-

fail to present his hands or arms upon request for handcuffing was constitutionally unreasonable.
*See Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 498 (6th Cir. 2012).

The Court will overrule the defendants' third objection.

E.

Next, the defendants argue that the plaintiff's testimony that he was "traumatized" and "stressed" by the beating is insufficient as a matter of law to establish that he suffered severe emotional injury sufficient to sustain the IIED claim. The plaintiff's testimony on this point is minimal and undeveloped, but his assertions that he was "traumatized," and that the beating he suffered at the hands of officers "brings a lot of stress in" is sufficient — if barely — to submit the claim to a jury. The testimony certainly is not overwhelming — or even particularly compelling — but the Sixth Circuit, applying Michigan law, has found evidence that amounted to little more will suffice for purposes of an IIED claim:

> An IIED plaintiff can recover damages for the emotional distress suffered. Although a plaintiff may also recover for bodily injury resulting from emotional distress, bodily injury is not a prerequisite to recovery. Here, there is evidence that Armstrong suffered severe distress as a result of Shirvell's conduct. Armstrong testified that he felt frustrated, furious, and low, and believed he was going through a period of depression. He suffered a loss of confidence. . . . Armstrong felt that he would continue to feel the emotional effects of Shirvell's campaign.

*Armstrong v. Shirvell*, 596 F. App'x 433, 455 (2015). For the same reasons discussed above, and noted by the magistrate judge, the jury also could find that the defendants' conduct in kicking and punching an unresisting suspect curled helplessly on the ground was "extreme and outrageous," and that the officers, in doing so, acted intentionally and "maliciously," such that they are not entitled to governmental immunity against the IIED claim. Therefore, the defendants' fourth objection will be overruled.

-15-

F.

The defendants offer no argument in support of their fifth "objection," in which they concede that this Court previously has held that excessive force claims are not barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), and merely assert that they included an objection *pro forma* to preserve the issue for appeal. That does not suffice. "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

Moreover, the courts of this circuit, including the court of appeals and district courts in this district, consistently have concluded that excessive force claims are not barred by the rule of *Heck v. Humphrey* where the plaintiff has pleaded guilty to a resisting arrest charge under Michigan state law.

In *Heck*, the Supreme Court held that a plaintiff seeking relief under 42 U.S.C. § 1983 cannot proceed on a claim when allowing him to do so would call into question the propriety of a prior criminal conviction that had not been set aside or expunged by judicial or executive action. The Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Humphrey*, 512 U.S. at 86-87. Discussing *Heck*'s reach, the Supreme Court has explained that the rule applies only to "a prisoner's § 1983 damages action [that] would implicitly question the validity of conviction or duration of sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per

-16-

curiam).  "*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."  *Ibid.*  *Heck* does not "categorically" bar all claims of constitutional violations that flow from an arrest and prosecution when the ensuing conviction remains intact.  *See id.* at 754.

"[T]he Sixth Circuit has held that a conviction for resisting or obstructing arrest under Michigan Compiled Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force."  *Steele v. Twp. of Flint*, No. 14-13640, 2015 WL 6470887, at *4 (E.D. Mich. Oct. 27, 2015) (citing *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)).  "Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the crime that the police did not use excessive force."  *Schreiber*, 596 F.3d at 334 (citing *People v. Ventura*, 262 Mich. App. 370, 686 N.W.2d 748, 752 (2004)).  "Furthermore, [the state court decisions on point strongly suggest that] excessive force by the police is not a defense to a resisting-arrest conviction."  *Ibid.* (citing *People v. Hill*, No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009)).

Two district courts in this district that recently confronted the same question concluded that the central holding of *Schreiber* remains good law, notwithstanding the intervening decision of the Michigan Supreme Court in *People v. Moreno*, 491 Mich. 38, 814 N.W.2d 624 (2012), where the court held that the "lawfulness" of the arrest is an element of the crime of resisting or obstructing arrest.  Those courts found that, notwithstanding the need to prove "lawfulness" of the arrest, the decisions on point in Michigan suggest that an arrest may be "lawful" even if excessive force is used

-17-

to accomplish it. *Johns v. Oakland County*, No. 15-12924, 2016 WL 4396065, at *5 (E.D. Mich. Aug. 18, 2016) (Michelson, J.) ("[T]he use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful. This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck*'s bar to a § 1983 excessive-force suit."); *Nelson v. Green Oak Township*, No. 14-10502, 2016 WL 233100, at *19 (E.D. Mich. Jan. 20, 2016) (Borman, J.) ("[S]uccess on Plaintiff's § 1983 claim for excessive force would not necessarily imply the invalidity of her conviction for resisting arrest.").

Those decisions are consistent with constitutional principles. Generally, the "lawfulness" of an arrest is measured by whether it was supported by probable cause. *See United States v. Campbell*, 486 F.3d 949, 953-54 (6th Cir. 2007) (quoting *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994); *see also Florida v. Royer*, 460 U.S. 491, 497-501 (1983); *Lilly v. City of Erlanger*, 598 F. App'x 370, 375-76 (6th Cir. 2015) ("[A] determination of probable cause to arrest depends simply on whether, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed an offense.") (quotation marks and alterations omitted). It follows, then that a police officer can make a "lawful" arrest — that is, one that is supported by probable cause — but still violate the arrestee's Fourth Amendment rights by effectuating that arrest through the use of excessive force. If the arrestee resists, and later is convicted of resisting that arrest, a subsequent lawsuit charging the arresting officer with excessive force would not "implicitly question the validity of [the] conviction," and therefore *Heck* would not bar the action.

In all events, the defendants' fifth objection will be overruled.

-18-

III.

After giving fresh review to the defendants' motion for summary judgment, in light of the magistrate judge's report and recommendation and the defendants' objections, the Court finds that the magistrate judge reached the correct result on all the question presented save defendant Galimbert's entitlement to a judgement in his favor as a matter of law.

Accordingly, it is **ORDERED** that the defendant's objections [dkt. #46] are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt. #41] is **ADOPTED IN PART AND REJECTED IN PART.**

It is further **ORDERED** that the defendants' motion for summary judgment [dkt. #38] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's claim for gross negligence, and all claims against defendant Deputy Galimbert, are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that the matter is referred to Magistrate Judge Mona K. Majzoub under the previous reference order [dkt. #7] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 29, 2017

-19-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 29, 2017.

s/Julie Owen
JULIE OWEN